Curia, per Dunkin, Ch.
The principle that a debtor has the right to give a preference among his creditors, is too well settled in this country .to be now questioned, even were the court less satisfied than they are of its correctness. In the decisions on the subject, certain leading modifications have been introduced, which are scarcely less well understood than the rule itself. In a written assignment of this character, any provision which secures an undue advantage to the debtor or assignor, has been held to vitiate the instrument, so far as the rights of other creditors were hin *310 dered and delayed. The rule applies at least with equal force to the case of a parol assignment, or transfer for the purpose of securing a preference. The court, in Smith v. Henry, only determined that on a sale to pay a pre-existing debt, the continuance of the vendor in possession, authorized the legal presumption of a secret agreement, or stipulation for this undue advantage, not to be rebutted by evidence, and was fraudulent, per se.
The chancellor who heard this cause at the circuit, dismissed the bill contrary to his own opinion, both of the law and facts, in deference t.o the authority of Smith & Henry. The only inquiry for the consideration of this court, is whether the decree pronounced is a necessary or legitimate inference from the law of that case.
It is proper to keep in mind, that Smith & Henry does not proceed on the ground, that the possession of the vendor, after a sale of chattels, is per se, fraud. Such a principle, it is believed, could not at this day be maintained. If the possession of the vendor be consistent with the character of the transaction, or if the sale be not to secure a pre-existing debt, but in consideration of a, price actually paid, or, as in Briggs & Jones v. Blake & Wife, 2 Hill. 629, where the vendor was to pay hire — in all these and other instances which might be adduced, it has been held, on sound principle, that the possession of the vendor, after the sale, did not invalidate the transfer. Indeed, in the case of Smith & Henry, p. 22, the court distinctly declare, “that it would not do to say, that the retaining possession by the vendor, after a sale, of itself constitutes fraud,” and the distinction is then made on which that decision is founded, and which has been already indicated. Now when a debtor sells his property to one of several creditors, in satisfaction of his debt, the creditor becomes the owner of the property and the debt is gone. If instead of enjoying that which is his own, the creditor permits the debtor to have the use of the property without hire or reward, this is inconsistent with the ordinary conduct of men, having a moderate regard to their own interests; it secures an advantage to the debtor, to which he' is not entitled, by giving him an-interest in the property which cannot be rendered available to his other creditors, in satisfaction of their *311 demands. It creates a presumption of unfair dealing, that the preference which had been given, was the price of this undue advantage. It may well be presumed, that property which the vendor continued to enjoy, and of which, for all substantial purposes, the vendee was only to be the riominal owner, was not sold at its full value. But, as is said in Smith & Henry, the conditions of such sales are usually known only to the parties, and are incapable of proof. The law supplies the defect, infers from the circumstances the existence of the corrupt agreement, and attaches to the transaction the character and penalty of fraud.
Are these reasons applicable to the case of a mortgage ? It has been already adjudicated in our own courts, (notwithstanding very high English authority to the contrary,) that until condition broken, the possession of the mortgagor is no evidence of fraud. It is well said in Gist v. Pressley, 2 Hill. C. R. 328: “It is the common understanding and practice of the country, that possession shall not be taken till condition broken. It is a conditional sale, to provide for satisfying.a debt, and, in conscience and equity, the party is not entitled to his satisfaction until the debt is due.” Is then the improbability so violent, that a mortgagee would honestly permit the day to pass without enforcing his mortgage— does the mortgagor, continuing in possession after condition broken, .thereby acquire such gratuitous and undue advantage, that the law infers fraud between the parties, and will admit of no explanation ? That is the isolated question for the determination of the court. — And it cannot be denied, that expressions in the books are not wanting, which would lead to the conclusion, that there is no difference between a mortgage of chattels, after condition broken, and an absolute sale. But let us apply the reason of the rule in Smith & Henry, to the case of a mortgage after condition broken. What undue advantage does the debtor derive, and what loss does the creditor, in consequence of the possession not being changed immediately on the forfeiture, so that it should be presumed the result of a corrupt agreement ? The debt of the mortgagor is secured, not extinguished, by the mortgage. Although the mortgagor remains in possession, the interest on his debt continues to accumulate, and is a compensation to the mortgagee for *312 the use of the property, or rather, for his forbearance to enforce his mortgage. So far from being a disadvantage to his other creditors, the continued possession of the mortgagor may, and probably will afford him an opportunity of removing his embarrassments. At least in nine cases out of ten, such is the object and motive of both parties, and such is the conviction of his other creditors, and however a contrary course might place beyond question the integrity of the transaction, a forced sale of .negroes under a mortgage, rarely benefits any other creditor than the mortgagee. But, above all, if the other creditors suspect collusion, or that their rights are affected by the indulgence granted to the mortgagor, it is always in their power to put an end to the enjoyment of this collusive, or merely prejudicial possession of the mortgagor, by subjecting the property to sale under execution, and appropriating the proceeds, after sátisfaction of the mortgage, to the payment of their own debts. If at such sale the mortgagee becomes the purchaser, and the mortgagor continues in possession, the transaction then becomes obnoxious to the rule of Smith & Henry. Perhaps the court might here stop, when it is remembered that in England, in New-York, in Massachusetts, and in many other States in the confederacy, the rule of the earlier cases has been gradually relaxed; the “stern doctrine,” as it has been termed by Mansfield and Buller, has been ameliorated and modified, and it is now conceded by the ablest and most uncompromising advocate, of what he designates “ as the conservative principle in our jurisprudence,” that the rule of throwing the burthen on the vendee or mortgagee, but permitting him to rebut the presumption by proof, “ is evidently as high toned as any that the courts of justice in this country, can by a permanent practice sustain.” 2 Kent. 528.
This court will not be charged with being behind the age, when they express an indisposition to enlarge the class of cases, in which fraud shall be a presumption of law, and not an inquiry to be determined by testimony. The case of Smith v. Henry, is not this case; nor is the decision, dismissing the bill, deemed a necessary .inference from the principles in that case adjudicated.
*313 It may not be irrelevant to add, that some prominent distinctions exist between a pledge of goods in England and a mortgage of slaves in South-Carolina, and the reasons of the rules applicable to the one, have no existence in relation to the other. The usual subjects of mortgage in England and other countries, and on which the cases have arisen, are furniture, merchandise, &c., articles which are consumed in the use. But slaves in South-Carolina, partake more of the nature of realty, and in the laws of some of the southern States, are so regarded. Although the transfer of this species of property does not require the solemnities which accompany a conveyance of land, yet the possession is, by no means, so unequivocal a criterion of title as in other chattels.— The law which protects them from distress for rent, when found on the premises of another, is only one evidence of the recognized distinction which exists.
But many of the mischiefs, which in other countries arise from mere ostensible ownership, are obviated by our registry laws.— As early as 1692, it was provided 'that the mortgage of chattels, first recorded, should have a priority, and, although the omission to record does not vitiate the instrument, yet the danger of a junior mortgage, and the suspicion which often attaches to the want of recording, have given to the provisions of the statute, in the understanding and practice of the country, an efficacy almost imperative. It has been repeatedly adjudged, that recording was notice. In Thayer v. Cramer, 1 M’Cord. Ch. Rep. 395, it was held to preclude a purchaser of lands from the mortgagor, to avail himself of the statute of limitations. In the subsequent case of Thayer and Davidson, (not reported,) which was a mortgage of a slave, it was determined by Chancellor Harper, on full consideration, that possession by a purchaser from the mortgagor, for four years after condition broken, protected his title by the statute of limitations, a protection for which, it would seem unnecessary to resort to the statute, if the possession of the mortgagor, after condition broken, rendered the lien void in law.
In the case under consideration, the good faith of the transaction is abundantly vindicated in the decree of the chancellor.— The justice of the debt was fully proved — the mortgage was im *314 mediately recorded, and, at the sale, express notice was given to the defendants, and the price bid, was in reference to the defect of title. The purchasers now insist upon holding the property discharged of the mortgage, and their claim has been sustained. On the validity of the limitation in the will of Mrs. Maples, the court are satisfied with the judgment heretofore pronounced at the circuit.
W. Desaussure & Moses, for the motion.
It is the unanimous judgment of the court, that the decree made in January, 1838, should be reversed, and it .is so ordered. It is further ordered and decreed, that the defendants be restrained from removing the slaves beyond the jurisdiction of this court, and that they give security to the commissioner in equity for Sumter district, for the forthcoming of the negroes, on the death of Thomas Maples.
Johnson and Johnston, Chancellors, concurred.